**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Criminal Case No.     23-cr-0300-CNS

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1.     IKPONMWOSA PERO ERHINMWINROSE,
2.     VICTOR HENSHAW TOBORE a/k/a DAVID BADRU,
3.     NYERHOVWO PRESLEY AGBURE, and
4.     OREOLUWA ABDUL-JABBAR ELEGBA,

      Defendants.

---

**INDICTMENT**

---

The Grand Jury charges:

**COUNT 1**
**Conspiracy to Commit Wire Fraud, 18 U.S.C. § 1349**

**THE CONSPIRACY AND SCHEME TO DEFRAUD**

1.     Beginning in or about March 2020 and continuing through in or about June 2021, within the State and District of Colorado and elsewhere, defendant IKPONMWOSA PERO ERHINMWINROSE knowingly combined, conspired, and agreed with CONSPIRATOR 1 and others known and unknown to the Grand Jury (together, the "Fraud Ring"), to commit the offense of wire fraud in violation of Title 18, United States Code, Section 1343.

**OVERVIEW OF THE CONSPIRACY**

2.     The conspiracy involved ERHINMWINROSE and other Fraud Ring participants—using the names and identifying information of others—registering

fraudulent corporate entities with state governments, obtaining fraudulent employer tax identification numbers from the Internal Revenue Service (IRS), creating fraudulent bank accounts at financial institutions, falsifying payroll and employment data, and fabricating tax and bank documents. These actions were taken to mislead lenders so that Fraud Ring participants could then fraudulently obtain loans and grants while hiding their own involvement in the conspiracy and scheme to defraud.

3.      The Fraud Ring Participants fraudulently obtained more than $7,700,000 in loans and grants from programs authorized by Congress in the Coronavirus Aid, Relief, and Economic Security (CARES) Act intended to provide emergency financial assistance for millions of American small businesses suffering economic harm caused by the COVID-19 pandemic. These programs included the Paycheck Protection Program (PPP) and the Economic Injury Disaster Loan (EIDL) program.

a.      The United States Small Business Administration (SBA) directly paid EIDLs and grants (EIDGs) to eligible small businesses experiencing substantial financial disruptions from the COVID-19 pandemic.

b.      PPP loan applications were processed by participating lenders. Lenders funded PPP loans using their own funds, which were guaranteed by the SBA. The SBA approved numerous lenders to participate in the PPP.

4.      Between March 2020 and April 2021, Fraud Ring participants including ERHINMWINROSE and CONSPIRATOR 1 fraudulently obtained PPP loans totaling more than $5.2 million and EIDLs and EIDGs totaling more than $2.5 million.

2

**MANNER AND MEANS OF CONSPIRACY**

Acting interdependently, ERHINMWINROSE and other Fraud Ring participants used the following manner and means, among others:

5.      Fraud Ring participants including ERHINMWINROSE fraudulently obtained registrations for new business entities in various states including Indiana and Kentucky.

6.      Fraud Ring participants including ERHINMWINROSE used existing or defunct corporate entities registered to real individuals for the purpose of applying for COVID-related benefits, such as PPP loans and EIDLs.

7.      Fraud Ring participants including ERHINMWINROSE submitted fraudulent applications to the Internal Revenue Service (IRS) for Employer Identification Numbers (EINs) on behalf of these companies. The IRS required businesses that have employees to register for an EIN, which is a unique nine-digit number to identify to the IRS an employer's tax account. Businesses created EINs using a system managed by the IRS called the Modernized Internet Employer Identification Number system. To create fraudulent EINs, Fraud Ring participants including ERHINMWINROSE used personally identifiable information (PII) of real individuals ("Identity Victims") without authorization. Fraud Ring participants including ERHINMWINROSE used PII of real individuals who owned the businesses, including Identity Victims #1-24.

8.      It was part of the conspiracy and scheme to defraud that, when Fraud Ring participants including ERHINMWINROSE created EINs, they caused interstate wires communications, including to an IRS server in Colorado from other states including Georgia.

9.      Fraud Ring participants including ERHINMWINROSE used fraudulent EINs and fraudulent corporate registration documents to open fraudulent bank accounts and to submit fraudulent applications for PPP loans and EIDLs.

10.      Fraud Ring participants including ERHINMWINROSE created and used email accounts in other names to perpetrate their fraud. These email accounts were listed on applications for PPP loans and EIDLs and allowed the Fraud Ring participants to send and receive emails pretending they were the business owner.

11.      Fraud Ring participants including ERHINMWINROSE stored PII and other identifying information about individuals, fraudulent bank accounts, fraudulent EINs, and fraudulent loan applications in email accounts and in cloud-based storage folders.

12.      It was part of the conspiracy and scheme to defraud that, for each funded PPP loan and EIDL, Fraud Ring participants caused interstate wire communications from the SBA's Denver Finance Center in Colorado to other states.

Paycheck Protection Program Loans

13.      To obtain a PPP loan, a business's authorized representative was required to sign and submit a PPP loan application to a private lender participating in the PPP. The PPP loan application required the business's representative to include information about average monthly payroll expenses and number of employees and to provide contact information, including phone number and email address. The payroll expenses were used to calculate the amount of money the small business was eligible to receive under the PPP. Fraud Ring participants including ERHINMWINROSE submitted fraudulent PPP loan applications that, among other false representations, fabricated the number of employees and average monthly payroll, falsely represented

that the purpose of the loan was to cover payroll costs, and falsely represented that the applicant was not engaged in any illegal activity.

14.    For PPP loan requests above a certain amount, businesses were required to submit documentation verifying their payroll expenses and bank account information, such as a voided check in the name of the business, bank statements, and tax returns. It was part of the conspiracy that Fraud Ring participants including ERHINMWINROSE submitted to lenders fabricated tax documents, bank statements, and bank checks to make it appear that the person submitting the PPP loan application owned the entity listed on the application and had a legitimate corporate bank account in the name of the company listed on the PPP loan application. In fact, the Fraud Ring participants had no legitimate relationship to the business listed on the application and listed fraudulent bank accounts controlled by Fraud Ring participants.

15.    Lenders also required verification of identity through driver's licenses or other identity documents. Fraud Ring participants including ERHINMWINROSE knowingly presented fabricated driver's licenses that appeared to be issued by states including Georgia to apply for loans.

16.    Before processing PPP loans, lenders and online loan marketplaces sometimes called and texted the phone numbers and emailed the email addresses listed on the PPP applications to obtain additional tax and financial records of the businesses. It was part of the conspiracy that Fraud Ring participants including ERHINMWINROSE used different phone numbers and email accounts on each application and pretended they were the real business owner when contacted by the lender or online loan marketplace.

5

17.     Fraud Ring participants applied for more than $14,200,000 in PPP loans. As a result of fraudulent PPP applications submitted by the Fraud Ring participants, lenders funded more than $5,200,000 in PPP loans.

Economic Injury Disaster Loans

18.     Under the EIDL program, a small business could receive a loan from the SBA in an amount of up to six months of working capital. From in or about March 2020 until in or about April 2021, the maximum amount any business could obtain was $150,000. The CARES Act also authorized the SBA to issue advances, or EIDGs, of up to $10,000 to small businesses. EIDL funds were permitted to be used for payroll expenses, sick leave, production costs, and business obligations, such as debts, rents, and mortgage payments.

19.     The EIDL application required the business's representative to provide truthful information about gross revenues, costs of goods sold, and number of employees. The revenue and cost figures were used to calculate the amount of the EIDL and the number of employees to calculate the amount of the EIDG. Fraud Ring participants including ERHINMWINROSE and CONSPIRATOR 1 submitted EIDL applications that, among other false statements, included fabricated gross revenues, costs of goods sold, and number of employees and provided false information about who had completed the application.

20.     Before the SBA disbursed EIDL funds, an applicant generally had to digitally sign a contract, referred to as a Loan Authorization and Agreement. Fraud Ring participants including ERHINMWINROSE and CONSPIRATOR 1 signed these contracts and falsely certified that they intended to use the EIDL funds for working

6

capital, had disclosed to the SBA all other COVID-related compensation, and were authorized to apply for an EIDL on behalf of the company listed on the application.

21.    ERHINMWINROSE shared information with other Fraud Ring participants, including CONSPIRATOR 1, to further the conspiracy and to fraudulently obtain additional EIDL funding, including the following:

     a.    On July 7, 2020, ERHINMWINROSE messaged bank accounts and routing numbers associated with Identity Victims #25 and 26 to another Fraud Ring participant for use on SBA applications. Following this message, the bank accounts listed on two EIDL applications were updated to the accounts in the names of Identity Victims #25 and #26. On July 8, 2020, the SBA disbursed $24,400 to these same bank accounts.

     b.    On August 15, 2020, ERHINMWINROSE messaged a Fraud Ring participant about the status of recent EIDL applications and getting a bank to release funds. Email accounts connected to this other Fraud Ring Participant were responsible for submitting at least 108 EIDL applications, at least 6 of which were funded for a total amount of at least $225,400.

22.    As a result of fraudulent EIDL applications submitted by Fraud Ring participants including ERHINMWINROSE and CONSPIRATOR 1, the SBA funded at least 60 applications for a total of at least $2,526,100 and denied hundreds of other loan applications.

All in violation of Title 18, United States Code, Section 1349.

7

## COUNT 2
### Money Laundering Conspiracy, 18 U.S.C. § 1956(h)

23.    Beginning in or about March 2020, and continuing thereafter until in or about May 2021, in the State and District of Colorado and elsewhere, defendants IKPONMWOSA PERO ERHINMWINROSE, VICTOR HENSHAW TOBORE a/k/a DAVID BADRU, NYERHOVWO PRESLEY AGBURE, and OREOLUWA ABDUL-JABBAR ELEGBA knowingly combined, conspired, and agreed with each other and with CONSPIRATOR 1, CONSPIRATOR 2, and others known and unknown to the Grand Jury ("the Fraud Ring") to:

a.    knowingly conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce, which involved the proceeds of a specified unlawful activity, that is wire fraud in violation of 18 U.S.C. § 1343, with the intent to promote the carrying on of specified unlawful activity, and that while conducting and attempting to conduct such financial transaction knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, in violation of 18 U.S.C. § 1956(a)(1)(A)(i).

b.    knowingly conduct and attempt to conduct financial transactions affecting interstate commerce that involved the proceeds of specified unlawful activity, that is, wire fraud in violation of 18 U.S.C. § 1343, knowing that the transaction was designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity

8

and that while conducting and attempting to conduct such financial transactions knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of 18 U.S.C. § 1956(a)(1)(B)(i).

**MANNER AND MEANS OF THE CONSPIRACY**

Acting interdependently, IKPONMWOSA PERO ERHINMWINROSE, VICTOR HENSHAW TOBORE a/k/a DAVID BADRU, NYERHOVWO PRESLEY AGBURE, OREOLUWA ABDUL-JABBAR ELEGBA, CONSPIRATOR 1, CONSPIRATOR 2, and other Fraud Ring participants known and unknown to the grand jury carried out the conspiracy using the following manner and means:

24.    Fraud Ring participants provided to financial institutions fabricated identification documents and false information about their identity to open bank accounts using names other than their own.  To open business bank accounts in the names of companies they did not own or operate and that did no actual business, Fraud Ring participants further presented to financial institutions fraudulently obtained corporate registrations and EINs.

25.    After PPP and EIDL funds—as well as fraudulently obtained federal tax refunds from the IRS and benefits from unemployment programs run by states including Colorado, Illinois, New Jersey, New York, and Ohio—were deposited into these fraudulently obtained bank accounts, Fraud Ring participants including ERHINMWINROSE, TOBORE, AGBURE, ELEGBA, CONSPIRATOR 1, and CONSPIRATOR 2 would, over a short time period, spend, transfer, and withdraw these

9

illegally obtained proceeds ("Wire Fraud Proceeds"), including by using the following manner and means:

a. Fraud Ring participants regularly accessed the bank accounts online from their own electronic devices and from IP addresses associated with their own identities, including 24.30.107.247 associated with AGBURE and 99.97.136.159 associated with TOBORE, to confirm the receipt of Wire Fraud Proceeds, check available balances, and access other online banking features.

b. Fraud Ring participants including AGBURE, ELEGBA ERHINMWINROSE, and TOBORE used instant messaging services including WhatsApp to exchange bank account information, request money, confirm the deposit of Wire Fraud Proceeds, and provide instructions for the withdrawal of Wire Fraud Proceeds.

c. Multiple Fraud Ring participants including ERHINMWINROSE and CONSPIRATOR 1 shared in common bank accounts to receive Wire Fraud Proceeds, physical mailing addresses to receive bank communications and checks, and money runners including TOBORE to manage bank accounts and coordinate the transfer of money to other members of the Fraud Ring.

d. Fraud Ring participants endorsed checks drawn on fraudulent bank accounts that received Wire Fraud Proceeds and deposited those checks into other fraudulent bank accounts controlled by other

10

Fraud Ring participants in the names of other individuals or corporate entities.

e.  After depositing Wire Fraud Proceeds, Fraud Ring participants including ERHINMWINROSE, TOBORE, AGBURE, and ELEGBA messaged each other and exchanged screenshots and bank statements to confirm the deposits.

f.  Multiple Fraud Ring participants used physical mailing addresses monitored by ELEGBA and TOBORE to receive correspondence related to, among other things, identity victims, fraudulent bank accounts, and Wire Fraud Proceeds. Fraud Ring participants set up delivery notifications and received text messages from other Fraud Ring participants to track the delivery of checks and correspondence related to identity victims, fraudulent bank accounts, and Wire Fraud proceeds.

g.  Fraud Ring participants deposited checks into accounts they controlled, including accounts under names other than their own using the following initials: W.C., M.H., B.M., M.N., and A.R.

h.  Fraud Ring participants including ERHINMWINROSE paid a fee to third-party money clerks to transfer Wire Fraud proceeds to fraudulent bank accounts controlled by Fraud Ring participants.

i.  Fraud Ring participants including ERHINMWINROSE and CONSPIRATOR 1 opened bank accounts under various names and loaded debit cards tied to these accounts with Wire Fraud

11

Proceeds from the EIDL program, state unemployment benefit programs, and federal tax refunds.

j.    After obtaining Wire Fraud Proceeds in fraudulent bank accounts, Fraud Ring participants including TOBORE used debit cards tied to these bank accounts at retail stores, including to purchase money orders and request cash back in large amounts.

k.    Fraud Ring participants including TOBORE purchased United States Postal Service and Western Union money orders using Wire Fraud Proceeds. To conceal and disguise the source of the Wire Fraud Proceeds used to purchase money orders and to avoid transaction reporting requirements, Fraud Ring participants would make multiple purchases of money orders in small amounts on the same day and in the same geographic area.

l.    Fraud Ring participants including ELEGBA and TOBORE visited ATMs and bank branches in a short time frame and in the same geographic area to make cash withdrawals of Wire Fraud Proceeds. The multiple transactions ensured that the withdrawals did not exceed transaction reporting thresholds or daily withdrawal limits, with multiple withdrawals often occurring on the same day from nearby ATMs and retail stores.

m.    Fraud Ring participants including AGBURE and TOBORE made bulk deposits of money orders purchased at various times from

12

Wire Fraud Proceeds in bank accounts under the control of other Fraud Ring participants including ELEGBA and TOBORE.

n.  Fraud Ring participants including ELEGBA and TOBORE—after laundering the Wire Fraud Proceeds through numerous intermediary accounts—converted money to cash through cash withdrawals from fraudulent bank accounts.

o.  Fraud Ring participants including CONSPIRATOR 2—after laundering the Wire Fraud Proceeds through numerous intermediary accounts—transferred money overseas via international wire transfers.

p.  Fraud Ring participants including TOBORE provided bank accounts and routing numbers for foreign bank accounts in the names of third parties to ERHINMWINROSE and AGBURE, who would then ensure that Wire Fraud Proceeds were successfully deposited in these foreign bank accounts.

q.  Fraud Ring participants used Wire Fraud Proceeds to pay for physical items and monetary costs that promoted their wire fraud operations, including by sending Wire Fraud proceeds from outside Colorado to a bank account in Colorado. Such costs included, but were not limited to, purchases of cellular telephones and cellular service, virtual private network ("VPN") subscriptions, custom website domains, mobile hotspot subscriptions, and identity-service

13

subscriptions used to obtain information about additional fraud victims.

26.    Fraud Ring participants caused acts in furtherance of the conspiracy to be committed in Colorado. As an example, on August 11, 2020, Fraud Ring participants created an EIN using an IRS server in Colorado. This EIN was needed to open a fraudulent corporate bank account used to launder Wire Fraud Proceeds.

All in violation of Title 18, United States Code, Section 1956(h).

**COUNTS 3-4**
**Wire Fraud, 18 U.S.C. § 1343**

**THE SCHEME TO DEFRAUD**

27.    From in or around May 2020, until in or around July 2020, within the State and District of Colorado and elsewhere, defendant IKPONMWOSA PERO ERHINMWINROSE devised, intended to devise, and participated in a scheme and artifice to defraud the Small Business Administration and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises.

**MANNER AND MEANS OF THE SCHEME TO DEFRAUD**

The fraudulent scheme operated and was carried out, in substance, as follows:

28.    Paragraph 18 is re-alleged and incorporated here by reference.

29.    ERHINMWINROSE submitted and caused to be submitted fraudulent information to the SBA in applying for four EIDLs and EIDGs, two of which were funded for a total of $192,500.

  a. On or about May 8, 2020, ERHINMWINROSE applied for an EIDL from the SBA on behalf of IGI Autos LLC. The SBA awarded a $37,500 EIDL to IGI Autos, plus a $5,000 EIDG.

14

b.      On or about July 8, 2020, ERHINMWINROSE applied for an EIDL from the SBA on behalf of IGI Logistics LLC. The SBA awarded a $150,000 EIDL to IGI Logistics.

c.      In June and July 2020, ERHINMWINROSE applied for two other EIDLs, for Ikponmwosa Auto Parts and for IGI Rentals LLC. The SBA declined to fund the EIDL applications of IGI Rentals and Ikponmwosa Auto Parts.

30.    He checked a box on each EIDL application falsely certifying under penalty of perjury that the information provided in the application was true and accurate and that he was not engaged in any illegal activity. He subsequently submitted each application to the SBA.

31.    Prior to the disbursement of the two EIDLs that the SBA funded, ERHINMWINROSE digitally signed a loan authorization and agreement, wherein he again certified that all representations in the loan application were true, correct, and complete.

32.    In truth, ERHINMWINROSE inflated revenues and number of employees for each entity. The information on the EIDL applications for IGI Autos, IGI Logistics, IGI Rentals or Ikponmwosa Auto Parts did not match the revenues or number of employees reported to the Georgia Department of Revenue.

**EXECUTION OF THE SCHEME**

33.    On or about the dates set forth below, for purposes of executing the scheme described in Paragraphs 27 through 32, defendant IKPONMWOSA PERO

15

ERHINMWINROSE caused to be transmitted, by means of wire communication in interstate commerce, as set forth below:

| Count | Date | Description of Wire |
|-------|------|---------------------|
| 3 | June 24, 2020 | Payment file for $37,400 EIDL designated for IGI Autos as payee created and certified at SBA finance center in Colorado and transmitted via interstate wire to U.S. Treasury disbursing office outside of Colorado. |
| 4 | July 19, 2020 | Payment file for $149,900 EIDL designated with IGI Logistics as payee created and certified at SBA finance center in Colorado and transmitted via interstate wire to U.S. Treasury disbursing office outside of Colorado. |

All in violation of Title 18, United States Code, Section 1343.

### COUNTS 5-11
### Wire Fraud, 18 U.S.C. § 1343

**THE SCHEME TO DEFRAUD**

34.    From in or around March 2020, until in or around September 2020, within the State and District of Colorado and elsewhere, defendant NYERHOVWO PRESLEY AGBURE devised, intended to devise, and participated in a scheme and artifice to defraud the Small Business Administration and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises.

**MANNER AND MEANS OF THE SCHEME TO DEFRAUD**

The fraudulent scheme operated and was carried out, in substance, as follows:

35.    Paragraph 18 is re-alleged and incorporated here by reference.

36.    Between March 31, 2020 and July 27, 2020, AGBURE submitted eight fraudulent EIDL applications for eight different entities using his own name. On each application, AGBURE inflated the number of employees and gross revenues. In reality, AGBURE never reported to tax authorities that his businesses had any employees or

16

revenues in 2019. He also checked a box certifying under penalty of perjury that the information provided in the application was true and accurate, despite knowing that it was not. He subsequently submitted each application to the SBA.

37.    The SBA funded six EIDLs to AGBURE's companies totaling $628,300 and five EIDGs totaling $16,000. Prior to disbursement of these six EIDLs, AGBURE digitally signed a loan authorization and agreement, wherein he again certified that all representations in the loan application were true, correct, and complete. He falsely certified that he would use loan proceeds solely as working capital to alleviate economic injury caused by the COVID-19 pandemic when, in fact, he used the majority of funds for non-eligible expenses, including transferring money to ERHINMWINROSE that was used to purchase automobiles, wiring money to other bank accounts controlled by AGBURE, laundering money through the bank accounts of other companies, and funding personal cryptocurrency and investment accounts.

38.    During the same period, two other EIDL applications were submitted from AGBURE's IP Address (24.30.107.247) under other names.

**EXECUTION OF THE SCHEME**

39.    On or about the dates set forth below, for purposes of executing the scheme described in Paragraphs 34 through 38, defendant NYERHOVWO PRESLEY AGBURE, caused to be transmitted, by means of wire communication in interstate commerce, as set forth below:

17

| Count | Date | Description of Wire |
|-------|------|---------------------|
| 5 | June 9, 2020 | Payment file for $69,400 EIDL designated for Nyerhos Systems as payee created and certified at SBA finance center in Colorado and transmitted via interstate wire to U.S. Treasury disbursing office outside of Colorado. |
| 6 | June 18, 2020 | Payment file for $116,900 EIDL designated with Nyerhos Mobile as payee created and certified at SBA finance center in Colorado and transmitted via interstate wire to U.S. Treasury disbursing office outside of Colorado. |
| 7 | June 18, 2020 | Payment file for $3,000 EIDG designated with Nyerhos Mobile as payee created and certified at SBA finance center in Colorado and transmitted via interstate wire to U.S. Treasury disbursing office outside of Colorado. |
| 8 | June 19, 2020 | Payment file for $80,400 EIDL designated with PhoneDial as payee created and certified at SBA finance center in Colorado and transmitted via interstate wire to U.S. Treasury disbursing office outside of Colorado. |
| 9 | June 20, 2020 | Payment file for $146,900 EIDL designated with Nyerhos Group as payee created and certified at SBA finance center in Colorado and transmitted via interstate wire to U.S. Treasury disbursing office outside of Colorado. |
| 10 | June 27, 2020 | Payment file for $86,400 EIDL designated with Sohreyn Assets Holdings as payee created and certified at SBA finance center in Colorado and transmitted via interstate wire to U.S. Treasury disbursing office outside of Colorado. |
| 11 | August 28, 2020 | Payment file for $127,700 EIDL designated with Nyerhos Trucklines as payee created and certified at SBA finance center in Colorado and transmitted via interstate wire to U.S. Treasury disbursing office outside of Colorado. |

All in violation of Title 18, United States Code, Section 1343.

## COUNT 12-15
### Wire Fraud, 18 U.S.C. § 1343

**THE SCHEME TO DEFRAUD**

40.    Beginning at least by April 2020 and continuing at least through April 2022, within the State and District of Colorado and elsewhere, defendant

IKPONMWOSA PERO ERHINMWINROSE devised, intended to devise, and participated in a scheme and artifice to defraud the United States and to obtain money and property from the IRS by means of materially false and fraudulent pretenses, representations, and promises.

**MANNER AND MEANS OF THE SCHEME TO DEFRAUD**

41.     The scheme involved using the identities of elderly victims ("Identity Victims") without their permission to apply for and obtain tax refunds and Economic Impact Payments that ERHINMWINROSE was not entitled to obtain.

42.     Specifically, between at least April 2020 and April 2022, ERHINMWINROSE filed or assisted with the filing of false federal income tax returns with the IRS in the names of Identity Victims for the purpose of fraudulently obtaining tax refunds. He used victim PII of at least nineteen Identity Victims (Identity Victims #27-45) over the age of 65.

43.     ERHINMWINROSE knew that the PII belonged to real people and maintained files in his email accounts that contained real names, addresses, Social Security numbers, and other information about the Identity Victims.

44.     The filed returns falsely represented, among other things, the amount of income and the amount of itemized deductions including medical and dental expenses, state tax payments, and charitable contributions. By falsifying deduction information, ERHINMWINROSE claimed itemized deductions in excess of the standard deduction available to all taxpayers and increased the amount of tax refunds he received.

45.     Based on the false information about income and itemized deductions, ERHINMWINROSE received refunds for tax years 2020, 2021, and 2022 in the names

of elderly victims, including Identity Victims #27 and 28, each of whom was over 65 years old.

46.     As a result of the false returns being filed, the IRS issued tax refunds in the form of ACH wire payments to the purported taxpayers and electronically deposited the funds into bank accounts designated by ERHINMWINROSE.

47.     To carry out the scheme, ERHINMWINROSE configured a custom internet domain, fansmexx.com, and created emails in the names of each of his victims using the @fansmexx.com domain.

48.     ERHINMWINROSE used Comcast and Verizon hotspots he was not legally authorized to use and corporate VPNs—thereby concealing his involvement—to submit fraudulent tax returns and to fraudulently check the status of tax refund payments.

49.     ERHINMWINROSE checked the status of refund payments using an online feature available on the IRS's website that allows tax filers to check on refund status by entering a real Social Security number, filing status, and the exact refund amount on the taxpayer's return.

50.     The CARES Act provided Economic Impact Payments of up to $1,200 per adult taxpayer for direct relief during the COVID-19 pandemic. In or about December 2020, the COVID-Related Tax Relief Act of 2020 authorized additional Economic Impact Payments of up to $600 per taxpayer. In or about March 2021, the American Rescue Plan Act authorized additional Economic Impact Payments of up to $1,400 per taxpayer. The United States Treasury Department and IRS calculated a taxpayer's amount of Economic Impact Payment based on information provided on tax returns from previous

years and deposited the payments to the same bank account that received previous refunds. It was part of the scheme that ERHINMWINROSE obtained Economic Impact Payments intended for elderly victims, including Identity Victims #27 and 28. For example, because ERHINMWINROSE filed false tax returns in the names of elderly victims for earlier tax years, he received the Economic Impact Payments in 2021 that should have been paid to these elderly victims, including Identity Victims #27 and 28.

**EXECUTION OF THE SCHEME**

51.    On or about the dates set forth below, for purposes of executing the scheme described in Paragraphs 40 through 50, defendant IKPONMWOSA PERO ERHINMWINROSE caused to be transmitted, by means of wire communication in interstate commerce, as set forth below:

| Count | Date | Description of Wire |
|-------|------|---------------------|
| 12 | 05/05/2020 | Logged on to IRS server located in Colorado to inquire about status of Identity Victim #27's 2019 tax refund from location outside of Colorado |
| 13 | 05/16/2020 | Logged on to IRS server located in Colorado to inquire about status of Identity Victim #28's 2019 tax refund from location outside of Colorado |
| 14 | 02/28/2021 | Logged on to IRS server located in Colorado to inquire about status of Identity Victim #28's 2020 tax refund from location outside of Colorado |
| 15 | 07/13/2022 | Logged on to IRS server located in Colorado to inquire about status of Identity Victim #27's 2021 tax refund from location outside of Colorado |

All in violation of Title 18, United States Code, Section 1343.

21

## COUNTS 16-18
### Aggravated Identity Theft, 18 U.S.C. § 1028A

52.    On or about the dates listed below, in the District of Colorado and elsewhere, defendant IKPONMWOSA PERO ERHINMWINROSE knowingly transferred, possessed, and used, without lawful authority, a means of identification of the below persons during and in relation to a felony violation enumerated in 18 U.S.C. § 1028A(c), to wit, wire fraud and conspiracy to commit wire fraud in violation of 18 U.S.C. §§ 1343, 1349, knowing that the means of identification belonged to another actual person.

| COUNT | DATE | PERSON |
|-------|------|--------|
| 16 | 01/25/2021 | Identity Victim #1, a Georgia resident |
| 17 | 05/05/2020 | Identity Victim #27, a Mississippi resident |
| 18 | 02/28/2021 | Identity Victim #28, a Mississippi resident |

All in violation of Title 18, United States Code, Section 1028A(a)(1).

### FORFEITURE

53.    Upon conviction of any of the violations alleged in Counts 1 and 3-15 of this Indictment involving the commission of violations of 18 U.S.C. §§ 1343 or 1349, defendants IKPONMWOSA PERO ERHINMWINROSE and NYERHOVWO PRESLEY AGBURE shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any and all rights, title, and interest in all property constituting and derived from any proceeds obtained directly and indirectly as a result of such offense or offenses, including, but not limited to a money judgment in the amount of the proceeds obtained by the defendant's scheme.

54.    Upon conviction of the violations alleged in Count 2 of this Indictment, in violation of 18 U.S.C. § 1956(h), defendants IKPONMWOSA PERO ERHINMWINROSE, VICTOR HENSHAW TOBORE a/k/a DAVID BADRU, NYERHOVWO PRESLEY AGBURE, and OREOLUWA ABDUL-JABBAR ELEGBA shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(1), any and all rights, title, and interest in all property involved in the offense and any property traceable to such property, including, but not limited to a money judgment in the amount of value of the property involved in the offense.

55.    If any of the property described above, as a result of any act or omission of defendants IKPONMWOSA PERO ERHINMWINROSE, VICTOR HENSHAW TOBORE a/k/a DAVID BADRU, NYERHOVWO AGBURE, and OREOLUWA ABDUL-JABBAR ELEGBA cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been substantially diminished in value; or has been commingled with other property that cannot be divided without difficulty, it is the intent of the United States, pursuant to 28 U.S.C. § 2461(c), incorporating 21 U.S.C. § 853(p), to seek forfeiture of any other property of defendants IKPONMWOSA PERO ERHINMWINROSE, VICTOR HENSHAW TOBORE a/k/a DAVID BADRU, NYERHOVWO AGBURE, and OREOLUWA ABDUL-JABBAR ELEGBA up to the value of the forfeitable property described above.

A TRUE BILL: <u>Ink signature on file in Clerk's Office</u>
FOREPERSON


COLE FINEGAN
United States Attorney

By: <u>s/Craig G. Fansler</u>
Craig G. Fansler
Assistant U.S. Attorney
U.S. Attorney's Office
1801 California St., Ste. 1600
Denver, CO 80202
Telephone: 303-454-0100
Fax: 303-454-0401
E-mail: Craig.Fansler2@usdoj.gov
Attorney for the United States