IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 1:23-cr-00300-CNS-1

UNITED STATES OF AMERICA,

    Plaintiff,

    v.

1. IKPONMWOSA ERHINMWINROSE,

    Defendant.

## GOVERNMENT'S MOTION IN LIMINE

The United States moves in limine to admit statements made by Ikponmwosa Erhinmwinrose during his proffer interview on August 22, 2023. Because the defendant made false statements during his proffer, the government can use all proffered information against him at trial under the explicit terms of the proffer agreement.

### Background

**1)**     **Indictment**

On June 20, 2023, the grand jury returned an indictment against four defendants, charging Erhinmwinrose as the lead defendant with 11 counts. Nine of those counts (Counts 1-2 and 12-18) relate to criminal activity he coordinated using false and stolen identities. Two other counts (Counts 3-4) charge a wire fraud scheme consisting of his submission of four fraudulent EIDL applications in his own name, on behalf of four different Georgia-registered businesses.

**2)  Proffer interview**

Two months after the indictment – on August 22, 2023[1] – the government conducted a recorded interview of the defendant pursuant to a proffer agreement. *See* ECF No. 156-1 (proffer agreement); ECF No. 206 (describing timeline). Paragraph 1 of the proffer agreement was explicit that "false statements willfully made" would "negate the government's agreement not to use this proffer information against" the defendant.

The government began by asking the defendant about four EIDL applications he submitted *in his own name*, which are charged as part of the fraud scheme in Counts 3-4 of the indictment. For one successful EIDL application that was funded for $150,000 – IGI Logistics, charged in Count 4 of the Indictment – Erhinmwinrose stated that for "IGI Logistics, I'm not going to lie to you guys. The revenue I put is not right because I needed that money at the time for my business, cause my business was really everything was going down."[2] He also was asked if the revenues he put on two unsuccessful applications—for Ikponmwosa Auto Parts and IGI Rentals—was correct. He responded by admitting that "I applied for those two loans too" and that "The revenue I put on those two was incorrect." This line of questioning occurred between 1 minute, 23 seconds to 9 minutes, 26 seconds of the first of three audio files of the interview, which was provided to defense with the Bates number of PROF_IE_00000005.

The government next asked the defendant about applications submitted *in other names*. This line of questioning began with the agent asking the defendant if he had

---

[1] Previous filings listed the date as July 22, 2023. It occurred on August 22, 2023.

[2] The quotations were generated by speech-to-text technology. The government would play the audio file at trial.

heard of the informacioncuenta1000 gmail address. The defendant replied that "I haven't seen that email before." He further said "the email does not belong to me." The agent responded that he wanted the interview to be helpful, but "so far I don't think you're being truthful with me." The defendant asked for clarification about what the agent thought was not truthful: "On what?" The agent responded "Telling me this isn't your email address." When the defendant continued to deny his use of that email address—even after being confronted with some of the proof that it was his—he was told that the government did not "think this is going well so far" and that it would soon "stop this" if he was unwilling to admit his use of this email address. The defendant responded: "The email is not mine. That long email is not mine." Soon after, the government told the defendant it would take a break so he could consult with his attorney and come back to ask about the tax fraud scheme involving stolen identities using the fansmexx.com custom email domain (Counts 12-15 of the indictment), and "if that's not any more fruitful then we'll probably shut it down at that point." When the interview resumed, he was asked if he wanted to change any answers. He responded that he did not. He denied submitting federal tax returns in other people's names, stating that he did not submit any tax returns "in any other people's name" and asserted that "I don't have people's information." After the government gave additional warnings, it ended the interview.

3) **Defense motion in limine related to "other information"**

On February 27, 2025, the defendant moved in limine to preclude any evidence related to his proffer, including any evidence regarding voice recognition. *See* ECF No. 156 at 2. After the government responded, the Court held that it was "premature to address" the evidentiary issue raised in the defendant's motion, in part because the

3

government had not decided how it intended to use proffer statements. ECF No. 206 at 3. However, the Court also stated that, before any statement was used, it should first be raised "with the Court outside the jury's presence." *Id.* at 4.

## Argument

**1)   The Court can grant government motions in limine after a defendant breaches a proffer agreement by making false statements**

This motion now seeks authorization to use the defendant's proffer statements in its case in chief based on the defendant's breach of the proffer agreement by making other false statements, including his truthful statements about lying about revenues on his EIDL applications. For evidentiary issues "akin to questions of law" that can be decided pretrial, they may be presented in a motion in limine filed before the deadline for such motions. *United States v. Mejia-Alarcon*, 995 F.2d 982, 987 (10th Cir. 1992). After similar breaches, courts have granted motions in limine allowing use of a defendant's proffer statements against the defendant. *See United States v. Rich*, 2021 WL 4144059, at *6 (Sept. 13, 2021) (approving of grant of motion in limine for government to affirmatively use proffer statements where nature of false information was omission of material facts); *United States v. Moro*, 2010 WL 3810041, at *2 (D.N.J. Sept. 22, 2010) (granting motion in limine for affirmative use of false proffer statements to prove false statements charge); *United States v. Nesbitt*, 2010 WL 3701337, at *6 (D.S.C. Sept. 14, 2010) (granting government motion in limine to affirmatively use defendant statements in case in chief because defendant breached proffer agreement by failing "to provide fully truthful information").

**2)   The defendant materially breached his proffer agreement by making false statements about his crimes involving identity theft**

The defendant's proffer agreement explicitly stated that any false statements

4

would negate limitations on the use of all statements he made during the proffer against him. Because his later false statements breached the terms of the proffer agreement, the government intends to use his statements against him, including his earlier admissions about EIDL fraud against him.

A proffer agreement "is a contract and its terms must be read to give effect to the parties' intent." *United States v. Hardwick*, 544 F.3d 565, 570 (3d Cir. 2008). "The terms of the agreement govern both the conditions constituting breach or performance and the remedies available in the event of a breach." *United States v. Aleman*, 286 F.3d 86, 89–90 (2d Cir. 2002). Terms in a proffer agreement are often designed "to keep the defendant honest, which makes the proffer device more useful to both sides." *United States v. Krilich*, 159 F.3d 1020, 1025 (7th Cir. 1998). By agreeing in a proffer agreement to provide truthful information, the "effect" of this term "depends on making deceit *costly*." *Id.* at 1025. "An individual may breach a proffer agreement if he is required to be 'completely truthful about the facts' and fails to disclose his involvement in the offense." *United States v. Sheffler*, 2022 WL 2257042, at *6 (C.D. Ill. June 23, 2022) (citing *United States v. Reed*, 272 F.3d 950, 954 (7th Cir. 2001)). A party must prove a breach of a proffer agreement by a preponderance of the evidence. *See, e.g.*, *United States v. Cobblah*, 118 F.3d 549, 551 (7th Cir. 1997).

Paragraph 1 of the proffer agreement was explicit: false statements during the proffer "negate the government's agreement not to use this proffer information against" the defendant and allow use of "all information" against him upon a finding by the government that he has "willfully provided false information." ECF No. 156-1, at 2. Upon this finding, the government can make direct use of a defendant's statements in his own

5

voice in its case in chief. *Id.*

Contract language similar to paragraph 1—that authorizes use of proffer information if the government finds a defendant is untruthful—is a common feature of proffer agreements. *See Reed*, 272 F.3d at 954 (finding that defendant's failure to be "completely truthful about the facts" was a breach of proffer agreement, and accepting remedy in the proffer agreement that it "destroyed any use immunity that [defendant] otherwise might have enjoyed vis à vis the statements that inculpated him"); *United States v. Adejumo*, 772 F.3d 513, 526 (8th Cir. 2014) (approving of use of proffer statements because defendant had agreed that his statements could be used against him "for any purpose" if he was not truthful during proffer); *United States v. Osagie*, No. 10-CR-267S, 2013 WL 1340366, at *1 (W.D.N.Y. Apr. 1, 2013) (approving of use of false statements to bring new charges when proffer agreement allowed government "to determine in good faith that Defendant provided false and misleading information during the [proffer], thereby negating any bar against the future use of Defendant's statements.").

During the defendant's recorded proffer, he lied about his use of the informacioncuenta1000 gmail account and use of stolen identities to commit fraud and related crimes including money laundering. The government found he willfully provided false information and informed him of this finding in real time. And extensive evidence proves by a preponderance that he a breached the proffer agreement when he falsely denied his use of this informacioncuenta1000 account and involvement in the identity-theft fraud scheme. *See, e.g.*, ECF No. 211 at 9-11 (describing some of the evidence establishing his use of informacioncuenta1000 email account). As only a few examples

provided in the government's written proffer and accompanying exhibits, the defendant (a) stored copies of his birth certificate and other important documents in the account; (b) used the account to email his personal account; (c) previously used his own nickname "Pero IK" as the account's display name; (d) Google Hangout chats referred to the account user as "Ike" and attached his credit report; (e) the same computer was used to access this account and his personal email accounts; and (f) the same passwords were used in the account as the defendant used for personal accounts including to order Domino's pizza. *Id.*

Under the plain terms of the proffer agreement, the defendant's choice to provide false information means the government can use "all information" obtained during his proffer against him, including his truthful statements. Because the defendant knowingly and voluntarily agreed to this contract term in the proffer agreement, any and all proffer information can be used against him at trial. *See United States v. Adekanbi*, 675 F.3d 178, 185 (2d Cir. 2012) (finding, in context of safety-valve proffer agreement, that "the government was under no obligation to save [defendant] from himself" by immediately terminating proffer when he continued to provide false statements, where proffer agreement informed him statements would be admissible).

3) **The defendant's material breach of the proffer agreement authorizes the government's use of all proffer statements against him**

During its case in chief, the government intends to use the audio from his proffer, including the truthful statements the defendant made about submitting fraudulent EIDL applications in his own name on behalf of IGI Autos, IGI Logistics, IGI Rentals, and Ikponmwosa Auto Parts. On the recorded audio, he provided information about their operations and revenues, including admissions that he provided false information about

7

the revenues of IGI Logistics, IGI Rentals, and Ikponmwosa Auto Parts on EIDL applications and about his spending of the EIDL proceeds. The proffer agreement authorizes use of his own statements against him in the prosecution's case in chief based on his false statements about his knowledge and use of the informacioncuenta1000 gmail account. To place the defendant's statements in their proper context, the government also will propose a limiting instruction based on Tenth Circuit Pattern Criminal Jury Instruction § 1.25, which addresses how the jury should weigh statements made by a defendant after the commission of crimes.

## Conclusion

The government asks the Court to grant this motion in limine and allow use during the prosecution's case in chief of the defendant's proffer statements, including his truthful statements about the EIDL applications submitted in his own name.

Respectfully submitted,

PETER MCNEILLY
United States Attorney

By:  s/ *Craig Fansler*
Craig Fansler
Sonia Dave
Assistant U.S. Attorneys
U.S. Attorney's Office
1801 California Street, Suite 1600
Denver, CO 80202
Telephone: 303-454-0100
Fax:  303-454-0406
E-mail: Craig.Fansler2@usdoj.gov
            Sonia.Dave@usdoj.gov
Attorneys for the United States

## CERTIFICATE OF SERVICE

  I hereby certify that on October 31, 2025, I electronically filed the foregoing **MOTION IN LIMINE** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record in this case.

                By:  s/ *Elizabeth Gomez Solis*
                Elizabeth Gomez Solis
                Legal Assistant
                U.S. Attorney's Office